L. B. SYNDICATE CORPORATION, Judgment Creditor, *v.* TOM LEE, Judgment Debtor.

Supreme Court, Nassau County, August 16, 1932.

*Harry G. Fromberg,* for the motion.

*Bernard Paul Hirsh,* opposed.

CUFF, J.   At the time of the argument, the judgment debtor represented that he was ill and could not attend on the day to which his examination in supplementary proceedings had been adjourned; also at the argument, in reply to the judgment creditor's accusation that the judgment debtor testified falsely on the examination about his ownership of an automobile, the judgment debtor's attorney said that he would file an affidavit explaining that testimony.

Supplementary proceedings are a source of expense and annoyance to judgment creditors and their attorneys.   They usually follow the recovery of judgment after a trial or on a default where the defendant has brazenly declared to the judgment creditor or his attorney that the whole suit was a waste of time, as he possessed nothing and was judgment proof.   This is a regular occurrence, but it is inconceivable that so many people would have no assets at all to meet even partially all of the judgments which may be found in the records unsatisfied.   My own impression is that many of these judgments or a substantial part of them would be paid if the creditor were given the full co-operation of the courts, a help that our present procedure denies.   (See *Zwerdling* v. *Hamman Bldg. Corp.,* 145 Misc. 471.)

This instance is an example of trifling with the court which, my experience sadly teaches me, is to a degree typical.   Let us observe

what happened.  The creditor obtained a judgment; he called upon the defendant to pay, but the latter ignored his request.  Following our procedure, he docketed his judgment on the 20th of April, 1932. Again conforming to the requirements, he issued execution, delivered same to the sheriff, paying fees for a service which he knew and the sheriff knew would be useless.  He waited until the sheriff entered in his books that he " returned said execution wholly unsatisfied."  Then the creditor's attorney prepared an affidavit, came from his office at 320 Broadway, New York, to Brooklyn on June eighth to obtain the signature of the judge then sitting in Part II to an order requiring the attendance of the judgment debtor at Mineola on the 28th day of June, 1932, at ten o'clock in the morning. The attorney caused a copy of the affidavit and order to be served on the judgment debtor, and did all these things, paying as he went the incidental fees which in the aggregate become substantial in these proceedings.  On June eighth counsel journeyed to and from Mineola, Nassau county, a distance of forty-four miles.  What for? To ask the debtor about his ability to pay the judgment which the court had commanded him to pay.  Who won the case?  Why should the creditor be put to all this expense and trouble?  The answer is our procedure.

Follow this further.  The questioning of the debtor took place in a little room, out of the presence of the court, with no clerk or stenographer in attendance, in an atmosphere that suggested to the debtor, as all of them seem to assume, that he could " get away with anything."  The result was that this judgment debtor denied owning an automobile that then was and now is registered in his name as owner.  A circumstance which might be referred to to show the disregard of debtors for our weak efforts to collect judgments against them is that this debtor drove to court in his own automobile, and, while he was testifying that he did not own it, it was parked near the court house, and after the examination he drove home in it.

The creditor has exhibited records which conclusively establish the ownership of this car in the debtor, and the debtor has made no attempt to explain this ownership or his testimony, in his answering affidavit, although it was promised at the argument that that would be done.  After giving such testimony, and apparently " getting away with it," and in view of the injudicial manner in which the examination was conducted, what was the next natural thing for the judgment debtor, encouraged at every turn by his disregard for the judgment, to do?  It was to absolutely ignore the direction to appear again for examination on the adjourned date — and that is exactly what he did.  In passing, it should not be forgotten that on the adjourned date the creditor's attorney again

made his forty-four mile journey to and from Mineola to record the absence of the judgment debtor. The creditor, who has been much inconvenienced thus far with no tangible results, is now called upon to have more affidavits and orders signed. He directed his attorney to draw such papers and obtain the judge's signature and effect service on the debtor. For what? With all the necessary expenses to bring this judgment debtor before a court and ask him why he did not appear on the adjourned date. At the argument of this motion the judgment debtor appeared and said that on the adjourned day he was sick. He was told to submit an affidavit if he wanted to save himself from punishment. (It should not be overlooked that once more the creditor's attorney had to journey to Brooklyn and spend the time necessary to be heard on this application.) The judgment debtor filed his affidavit. With it is a statement by a doctor, which is sworn to, that the judgment debtor was under his care for the " past few days suffering from an upper respiratory condition." This paper is dated July 6, 1932, and sworn to July 19, 1932. The default was July 7, 1932. In the judgment debtor's affidavit no explanation is given why he did not communicate with the judgment creditor's attorney and advise him before July seventh of his illness. There was ample time to notify the judgment creditor's attorney and save him that forty-four mile journey. Nowhere except in supplementary proceedings would such discourtesy be practiced or such waste of another person's time be tolerated.

In this case the fact is that the judgment debtor was not ill. After noting the default, the attorney for the judgment creditor and a deputy sheriff went to the judgment debtor's place of business (this penniless person has, in addition to an automobile, a place of business). There they saw him working in his store, about three miles from the court house. This was about thirty minutes after the time when he was supposed to have attended court. They questioned him as to his absence. His reply was to enter upon a tirade of abuse against the courts and everyone connected with this case.

Perhaps the judgment debtor cannot pay the judgment. Should the court accept this untruthful explanation?

A practice has developed where under these circumstances the court directs that the judgment debtor submit to examination at the time when he has condescended to appear on the motion to punish him for contempt; pronounce benediction and admonish him to sin no more. What becomes of the waste of the lawyer's time, the disregard of the court's processes, and the flagrant contempt by a person who, adjudicated indebted by law, should come humbly before the court and extend his full co-operation to the court and his

creditor. This is all forgiven, disregarded and ignored by requiring the judgment debtor to do that which he should have done, but, instead, he has had the pleasure of putting his creditor to greater trouble and expense, required the court's personal attention, and answered the questions at a time and place fixed by himself. Would excusing this conduct be upholding the dignity of the judgment, the effectiveness of the courts, and the importance of the services rendered by an attorney at law?

Of course, another view may be taken. Cunning judgment debtors are sometimes able to tire out the judgment creditor. They exhaust his patience. They weary him of expending money as required by our procedure to collect that which the court has commanded should be paid to him. When, if ever, this judgment creditor, who is sailing in a boat, like many others, over a rough sea known as supplementary proceedings, collects his judgment, he will have spent in the litigation the amount realized and more. In other words, after the State at great expense has supplied him with process (although thoroughly ineffectual), the judgment creditor finds that he would have been better off if he had never sued at all. What a reflection upon the sovereign State of New York: And the attorney can never be paid for the work that he was called upon to do. It is not my intention to hold that every judgment debtor should be subjected to persecution because he owes money. There are many instances where the money cannot be paid. I do hold, however, that, in view of the fact that a mandate of the court has been issued directing him to pay, he is in no position to disobey orders of the court and disregard papers drawn by lawyers. Lawyers' time is valuable; their letters and papers should be respected and particularly by a judgment debtor. Every effort should be made to make the collection of a judgment simple and inexpensive. If the judgment debtor is of the class who cannot pay, he should frankly say so, and should place himself at the disposal of the judgment creditor, in order to reduce his financial situation to a sworn statement.

As long as we have the slow-moving ineffective supplementary proceeding, we ought to strive to bring respect for that procedure up to the level of other judicial proceedings.

Although the judgment creditor's attorney is shunted off to a secluded part of the court house for this important questioning of the judgment debtor, the latter should be impressed with its seriousness, that he is to speak the truth, and, when served with papers, he is not to absent himself on the return day or any adjourned day.

This judgment debtor clearly wasted the time and money of this judgment creditor; defied the oath he took to tell the truth; and

up to now has not contributed one cent toward the reduction of his debt, but, on the contrary, the unpaid creditor has had to assume the expenses of these supplementary proceedings. Again, may I point out that the creditor won the suit. The judgment debtor will be found guilty of contempt, and fined fifty dollars. He may purge himself by paying that sum in five ten-dollar monthly installments, the payments to be credited on the judgment.

This motion is granted, with thirty dollars costs.